UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


| | | |
|---|---|---|
| IAN NORRED, Individually, and on behalf of all others similarly situated under 29 U.S.C § 216(b), | ) ) ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiffs, | ) | |
| | ) | 3:19-CV-1010-G |
| VS. | ) | |
| | ) | |
| COTTON PATCH CAFÉ, LLC, | ) | |
| | ) | |
| Defendant. | ) | |


## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, Cotton Patch Café, LLC, to

compel arbitration and to stay this case pending arbitration, pursuant to the Federal

Arbitration Act ("FAA"). For the reasons set forth below, the motion is granted.

## I. BACKGROUND

The lead plaintiff in this action, Ian Norred, filed suit against his employer,

Cotton Patch Café, LLC ("Cotton Patch") on April 26, 2019, alleging violations of

the Fair Labor Standards Act ("FLSA"). Complaint ("Complaint") (docket entry 1)

at 1. On June 4, 2019, another former Cotton Patch employee, Rain Bennett, joined

Norred as a named plaintiff. Notice of Consent to Become a Party Plaintiff ("Notice

of Consent") (docket entry 9).

The defendant operates a chain of Cotton Patch Café restaurants. Complaint at 4. Norred worked as a server at one of these restaurants from December, 2017 until April, 2019. Appendix in Support of Plaintiffs' Response in Opposition to Defendant's Motion to Compel Arbitration and Stay ("Response Appendix") (docket entry 14) at 1. Bennett worked as a server at a Cotton Patch restaurant from June of 2018 until March or April of 2019. Appendix to Motion to Compel Arbitration and Stay Court Proceedings ("Motion Appendix") (docket entry 11) at 4-5; Response Appendix at 3.

On December 27 or 28, 2017, Norred underwent Cotton Patch's onboarding process for new hires. *See* Appendix to Defendant's Reply in Support of its Motion to Compel Arbitration and Stay Court Proceedings ("Reply Appendix") (docket entry 16) at 1-2 (describing Cotton Patch's onboarding process); *id.* at 5-6 (showing document that Norred signed during onboarding dated 12/28/2017). The process required Norred to fill out various forms on a computer. *Id.* at 1. During his onboarding, Norred electronically signed a document titled "Notice to Employees." Motion Appendix at 2; Reply Appendix at 5-6. The notice to employees contains a section titled "Arbitration Acknowledgment, Safety Pledge and Receipt," and another titled "Agreement to Arbitrate." Reply Appendix at 5. Bennett also underwent the onboarding process and electronically signed the notice to employees on her first day of employment at Cotton Patch. Motion Appendix at 4.

The agreement to arbitrate section of the notice to employees reads as follows:

- I agree to use binding arbitration, instead of going to court, for any claims, including any claims now in existence or that may exist in the future (a) that I may have against [Cotton Patch], its affiliates, and/or their current or former employees or (b) that [Cotton Patch] and/or its affiliates may have against me. Without limitation, such claims include any concerning wages. Expense reimbursement, compensation, leave, employment (including, but not limited to, any claims concerning harassment, discrimination, or retaliation), conversion, breach of fiduciary duty, negligence, employment-related tort claims, and/or termination of employment.

- I am waiving my right to a jury trial and any right I may have to bring any employment-related claim covered by this agreement as a Class Action (as defined in full document see hyperlink above) or any class or representative action (either in court or in arbitration) or to participate in such action.

By signing below I agree that I have read and understand the above information, and I have been given an opportunity to discuss and ask questions. I have received a copy of the arbitration agreements and agree to be bound by the terms and conditions therein.

Reply Appendix at 5-6.

The hyperlink referenced in the agreement to arbitrate section appears at the top of the notice to employees in underlined text that reads "View Agreement." *Id.* at 5. When clicked on, the hyperlink opens a document in a new internet window with the headings "Arbitration Agreement," and "Mutual Agreement to Arbitrate" printed at the top of the page. Reply Appendix at 3; *id.* at 8 ("the arbitration agreement").

The arbitration agreement states, in pertinent part, that "[t]his [a]greement is mutual, covering all claims that [Cotton Patch] or [c]laimant may have which arise from: Any injury suffered by [c]laimant while in the scope and course of [c]laimant's employment with [Cotton Patch], . . . and any other loss, detriment or claim of whatever kind and character." *Id.* at 9. The arbitration agreement also states that the effective date of the agreement is August 1, 2014. *Id.* at 8. Finally, the arbitration agreement grants Cotton Patch "the right to prospectively terminate th[e] [a]greement," but qualifies this right by stating that "[t]ermination is not effective for [c]overed [c]laims which accrued or occurred prior to the date of termination," and that "[t]ermination is also not effective until ten (10) days after reasonable notice is given to [c]laimant." *Id.* at 12.

The "arbitration acknowledgment, safety pledge and receipt" section of the notice to employees states: "By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the . . . [a]rbitration [a]greement, effective August 1, 2014." *Id.* at 5. Despite this language in the notice to employees, Norred and Bennett maintain that prior to the filing of this lawsuit, they had not seen the arbitration agreement. Response Appendix at 2, 3.

Norred was seventeen years old when he signed the notice to employees and began working for Cotton Patch in December of 2017. *See id.* at 1. Norred turned eighteen on July 9, 2018, *id.*, and stopped working at Cotton Patch on April 30,

2019. Motion Appendix at 4. Norred filed the complaint in this action on April 26, 2019, alleging that Cotton Patch has failed to adequately compensate him and other similarly situated employees, in violation of the FLSA. *See* Complaint (docket entry 1). Bennett filed her notice of consent on June 4, 2019, *see* Notice of Consent, and Cotton Patch filed the instant motion to compel arbitration on June 7, 2019, Motion to Compel Arbitration and Stay Court Proceedings ("Motion") (docket entry 10). Norred filed his response to the motion on June 28, 2019, Response (docket entry 13), and Cotton Patch filed its reply on July 12, 2019, Defendant's Reply in Support of its Motion to Compel Arbitration and Stay Court Proceedings ("Reply") (docket entry 15).

In its motion, Cotton Patch asserts that the plaintiffs' FLSA claim is subject to the terms of the notice to employees and the arbitration agreement, and that, in consequence, the court should stay proceedings in this case and order the plaintiffs to arbitrate their claims, or, in the alternative, that the court should dismiss this action with prejudice. Motion at 1. The matter being fully briefed, Cotton Patch's motion is now ripe for decision by the court.

II. ANALYSIS

A. Legal Standard

The Federal Arbitration Act ("FAA") applies to any written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a

controversy thereafter arising out of such contract. . . ." 9 U.S.C. § 2. The Supreme Court has held that "involving" should be read expansively to apply to any transaction affecting interstate commerce. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995). In this case, the parties agree that this matter implicates interstate commerce, as the plaintiffs' work at Cotton Patch involved, for example, serving customers who were traveling from out of state across interstate lines. *See* Complaint at 6; Motion at 6-7.

Section 2 of the FAA provides that agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4)).

In considering whether a dispute is subject to binding arbitration, "the court engages in a two step process." *Brendel v. Meyrowitz*, No 3:15-CV-1928-D, 2016 WL 302282, at *3 (N.D. Tex. Jan. 25, 2016), *reconsideration denied*, No. 3:15-CV-1928-D, 2016 WL 1721312 (N.D. Tex. Apr. 29, 2016) (Fitzwater, J.). The first step a court must take "is to determine whether the parties agreed to arbitrate that dispute."

*Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Brendel*, 2016 WL 302282 at *3 (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). In determining whether the parties agreed to arbitrate the dispute, "courts apply the contract law of the particular state that governs the agreement." *Washington Mutual Finance Group, L.L.C. v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Although there is a strong federal policy favoring arbitration, the court does not yield to this policy when making the threshold determination about the existence of a valid agreement to arbitrate. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (internal citations omitted). However, once an arbitration clause's validity has been established, the court must observe the strong federal policy favoring arbitration and resolve all ambiguities in favor of arbitration. *Primerica Life Insurance Company v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).

The second step requires the court to decide "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corporation*, 473 U.S. at 628. A court applies the contract law of the particular state that governs the agreement when making this determination.

*Brendel*, 2016 WL 302282 at *3 (citing *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F.3d 159, 166 (5th Cir. 2004)).

"The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 Fed. App'x 310, 315 (5th Cir. 2012). Due to the strong federal policy in favor of enforcing arbitration agreements, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Brendel*, 2016 WL 302282 at *3 (citing *Carter v. Countrywide Credit Industries.*, 362 F.2d 294, 297 (5th Cir. 2004)).

## B. Application

### 1. *Validity of the Arbitration Agreement*

#### a. Scope of the Contracts Between Cotton Patch and the Plaintiffs

To determine whether valid arbitration agreements exist between the plaintiffs and Cotton Patch, the court looks to Texas contract law.[1]  See *Bailey*, 364 F.3d at 264. "Under Texas law, a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration." *In re Online Travel Co.*, 953 F. Supp. 2d 713, 718 (N.D. Tex. 2013) (Boyle, J.) (citing *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.-San Antonio 1997, no writ)).

---

[1]     The parties agree that Texas law applies.  Motion at 7; Response at 2.

Here, the terms of the offer pertinent to this motion appear in the notice to employees and the arbitration agreement.  Both Norred and Bennett manifested their assent to enter a contract by adding their signatures to the bottom of the notice to employees document.  See *Wright v. Hernandez*, 469 S.W.3d 744, 757 (Tex. App.-El Paso 2015, no writ) (quoting *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 208 (Tex. App.-El Paso 2004, orig. proceeding))("[T]he fact that a party has signed a contract creates a 'strong presumption' that the party has assented to the terms of an agreement.").  The parties, however, vigorously dispute the scope of the terms to which the parties mutually assented.

The plaintiffs argue that, to the extent the parties mutually assented to any terms, such terms are limited to those that appear in the notice to employees.  *See* Response at 5-6.  The plaintiffs correctly note that neither Norred, Bennett, nor Cotton Patch signed the arbitration agreement.  *Id.* at 12.  Plaintiffs also point to the fact that both Norred and Bennett submitted declarations stating that they had never seen a copy of the arbitration agreement prior to the filing of this lawsuit.  *See id.* at 13.  Accordingly, the plaintiffs contend that at the time they signed the notice to employees, they were unaware of the terms in the arbitration agreement, and therefore could not have assented to them.  *See id.* at 12-13.  The plaintiffs also assert that, because the text of the notice to employees alone does not include language

indicating that Cotton Patch offered consideration for the agreement, the contracts fail for lack of consideration. *Id.* at 5-6.

Cotton Patch rejoins that it entered valid contracts with the plaintiffs, the terms of which are comprised of both the notice to employees and the arbitration agreement. Reply at 4. Cotton Patch argues that the notice to employees, which both Norred and Bennett signed, incorporated the arbitration agreement by reference. *See id.* Finally, Cotton Patch asserts that the contract is supported by mutual consideration, as the arbitration agreement establishes by its terms that the "[a]greement is mutual, [and] cover[s] all claims that [Cotton Patch] or [c]laimant may have which arise from" various circumstances. *See id.* at 4; Reply Appendix at 9.

Upon review of the briefing and evidence submitted by the parties, the court concludes that the defendant has met its burden to establish by a preponderance of the evidence that Cotton Patch entered valid contracts with both Norred and Bennett, the terms of which are comprised of both the notice to employees and the arbitration agreement.

"Texas contract law allows a document or provisions from another document to be incorporated into a contract." *Federal National Mortgage Association v. K.O. Realty, Inc.*, No. 3:13-CV-2781-L, 2015 WL 477250, at *11 (N.D. Tex. Feb. 4, 2015) (Lindsay, J.) (citing *Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 665 (Tex. App.-Houston [14th Dist.] 2004, pet. denied)). Under the doctrine of

incorporation by reference, "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. The language used is not important provided [that] the document signed . . . plainly refers to another writing." *In re Prudential Insurance Co. of America*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). "[A] 'mere reference' to another document is not enough to establish a wholesale incorporation of the referenced document 'when the facts and circumstances surrounding the agreement do not indicate that incorporation was intended.'" *K.O. Realty, Inc.*, 2015 WL 477250, at *12 (quoting *Al Rushaid v. National Oilwell Varco, Inc.*, 757 F.3d 416, 420 (5th Cir. 2014)). "When, however, the reference to another document 'is clear and the circumstances indicate that the intent of the parties was incorporation, [Texas] courts have held that a document may be incorporated, even in the absence of specific language of incorporation.'" *Id.* (quoting *Al Rushaid*, 757 F.3d at 420) (alteration in *K.O. Realty, Inc.*).

Furthermore, under Texas law, when "agreements [are] executed at the same time, with the same purpose, and as part of the same transaction, [they] are construed together." *In re Prudential Insurance Co.*, 148 S.W.3d at 135. "This rule of construction, however, does not extend to documents that simply appear to relate to the same transaction." *K.O. Realty, Inc.*, 2015 WL 477250, at *12 (citing *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968)). Where a signed writing does not expressly reference another writing, the unsigned writing will only be incorporated

"where the signed paper at the time of the signature can be shown from its contents to be based on an adoption of a then existing unsigned paper." *Owen*, 433 S.W.2d at 167.

Here, the notice to employees that both Norred and Bennett signed directly references the arbitration agreement. The notice to employees contains the following language: "By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the . . . *Arbitration Agreement, effective August 1, 2014.*" Reply Appendix at 5 (emphasis added). Additionally, the notice to employees states: "I am waiving my right to a jury trial and any right I may have to bring any employment-related claim covered by this agreement as a Class Action (as defined in full document *see hyperlink above*)." *Id.* (emphasis added). Furthermore, the aforementioned hyperlink that leads to the arbitration agreement appears at the top of the notice to employees in underlined text that reads "View Agreement." *Id.* at 2, 5. Finally, the notice to employees states: "I have received a copy of the arbitration agreements and agree to be bound by the terms and conditions therein." *Id.* at 6.

Taken together, these provisions establish that the notice to employees did not comprise the "full document" that the parties contemplated at the time of signing, that the "[a]rbitration [a]greement [that became] effective August 1, 2014" informs the scope of the notice to employees, and that Norred and Bennett either read, or had the opportunity to read, the arbitration agreement prior to signing the notice to

employees.  See *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006)

("[A] party who has the opportunity to read an arbitration agreement and signs it is

charged with knowing its contents.") (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d

87, 90 (Tex. 1996)).  Thus, not only does the notice to employees expressly reference

the arbitration agreement, "the signed [notice to employees] at the time of the

signature can be shown from its contents to be based on an adoption of [the] then

existing unsigned [arbitration agreement]."  See *Owen*, 433 S.W.2d at 167.  The

court therefore concludes that the notice to employees incorporates by reference the

arbitration agreement (for clarity, the court will refer to these two documents

collectively as "the arbitration contract").

Having concluded that the notice to employees incorporates the arbitration

agreement, the court concludes that the arbitration contracts between Cotton Patch

and the plaintiffs are supported by mutual consideration.  Consideration is "'a

present exchange bargained for in return for a promise'–which may take the form of

'a benefit to the promisor or a detriment to the promisee.'"  *Goins v. Ryan's Family

Steakhouses, Inc.*, 181 F. App'x 435, 437 (5th Cir. 2006) (quoting *Roark v. Stallworth

Oil & Gas*, 813 S.W.2d 492, 496 (Tex. 1991)).  The arbitration agreement is mutual,

and "cover[s] all claims that [Cotton Patch] or [c]laimant may have which arise from:

Any injury suffered by [c]laimant while in the Course and Scope of [c]laimant's

employment with [Cotton Patch], . . . and any other loss, detriment or claim of

whatever kind and character." Reply Appendix at 9. Thus, all parties to the contracts incurred a legal detriment by foregoing the right to bring claims covered by the arbitration agreement in a court of law, and the contracts are supported by mutual consideration.[2] The court therefore concludes that the arbitration contracts between Cotton Patch and the plaintiffs are valid.

b. The Plaintiffs' Contract Defenses

In addition to the plaintiffs' arguments concerning mutual assent and consideration, the plaintiffs assert various defenses to the enforceability of the arbitration contracts. Namely, the plaintiffs argue that the arbitration contracts are unenforceable because: 1) the contracts are illusory; 2) the arbitration agreement applies only to current Cotton Patch employees, not past employees; 3) the contract between Norred and Cotton Patch is voidable and disaffirmed, as Norred was a minor when he signed the notice to employees; and 4) the arbitration contracts are unconscionable. *See* Response at 15-23. The court finds none of these arguments persuasive.

First, the plaintiffs argue that the arbitration contracts are illusory because they are based on a unilateral promise to arbitrate, and because Cotton Patch can

---

[2] In addition, the arbitration agreement expressly states that "[Cotton Patch]'s and [c]laimant's mutual promise to resolve claims and controversies by arbitration in accordance with the provisions of this [a]greement constitutes consideration for this [a]greement." Reply Appendix at 11.

unilaterally terminate the agreements. Neither is true. Under Texas law, "[a]n arbitration agreement is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate." *Royston, Rayzor, Vickery,* & *Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015). Similarly, an "arbitration provision [is] illusory if the contract permits one party to legitimately avoid its promise to arbitrate, such as by unilaterally amending or terminating the arbitration provision and completely escaping arbitration." *Id.*

Here, the arbitration contracts "cover[] all claims that [Cotton Patch] and [Norred and Bennett] may have which arise from" various circumstances. Thus, both Cotton Patch and the plaintiffs are obligated to submit claims that fall within the scope of the agreement to arbitration.[3] *See id.* ("[T]he mere fact that an arbitration clause is one sided does not make it illusory."). Furthermore, the fact that Cotton Patch may unilaterally and prospectively alter the terms of the arbitration agreement does not render Cotton Patch's promise to submit to arbitration illusory, as Cotton Patch's power to terminate the agreement does not apply to claims that accrue or occur prior to the date of termination, and termination is not effective until ten days after reasonable notice is given to an employee. See *In re Halliburton Co.*, 80 S.W.3d

---

[3] In support of their argument that the arbitration agreements are based on an illusory promise, the plaintiffs cite to *Acosta v. Fair Issac Corp.*, 669 F. Supp. 2d 716 (N.D. Tex. 2009) (Boyle, J.). The plaintiffs' reliance on *Acosta* is misplaced, as the court in *Acosta* applied California law in considering whether the arbitration clause at issue there was enforceable. *See id.* at 719-20.

566, 570 (Tex. 2002) (finding employer's promise to submit to arbitration was not illusory where the employer retained the right to terminate the arbitration agreement, but the agreement stated: "termination shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination."), *cert. denied,* 537 U.S. 1112 (2003). Accordingly, the court concludes that Cotton Patch's promise to arbitrate is not illusory.

Second, the plaintiffs assert that the arbitration agreement only applies to current Cotton Patch employees, not past employees, and thus, that the agreement is not binding on Norred and Bennett. The plaintiffs point to the definition of the word"claimant" in the agreement, which states: "[c]laimant means a person who is employed by [Cotton Patch] and has a [c]overed [c]laim." Reply Appendix at 8. The plaintiffs argue that the agreement's use of the present tense "is employed" excludes all past Cotton Patch employees from the scope of the arbitration agreement. In support of their argument, the plaintiffs cite *Aldridge v. Thrift Financial Marketing, LLC*, 376 S.W.3d 877 (Tex. App.-Fort Worth 2012, no pet.). In *Aldridge*, a former member of an LLC sought to invoke the arbitration clause in the LLC's company agreement to compel the LLC to arbitrate its claims against him. *Id.* at 883. The court held that the former member could not invoke the LLC's arbitration clause because the company agreement applied only to members of the LLC, and "the definition of the term 'Member' set forth in the [c]ompany [a]greement expressly

'excludes any Person *who has ceased to be a Member.*'" *Id.* at 883, 885 (emphasis in original).

*Aldridge* is distinguishable on two grounds. First, the definition of "claimant" in the arbitration contracts between Cotton Patch and the plaintiffs does not expressly exclude any person who has ceased to be a Cotton Patch employee. And second, the arbitration contracts expressly state that "[t]his [a]greement shall survive the employer-employee relationship between [Cotton Patch] and the [c]laimant and shall apply to any [c]overed [c]laim whether it arises or is asserted during or after termination of the [c]laimant's employment with [Cotton Patch] . . . ." Reply Appendix at 12. Accordingly, despite the present tense of the verb "to be" in the arbitration contract's definition of "claimant", the court concludes that when read holistically, the arbitration contracts apply to the plaintiffs' claims which arose during the course of their employment, despite the fact that the plaintiffs no longer work for Cotton Patch.[4]

Third, Norred argues that the arbitration contract is unenforceable as to him because he was a minor when he signed the notice to employees, and therefore had the right to void and disaffirm the contract at will. Response at 21-22. Under Texas

---

[4]     The court also notes that Norred was still an employee at Cotton Patch when he filed this lawsuit, and thus, he would be considered a "claimant" even under the plaintiffs' proffered interpretation of the contract. *See* Complaint; Motion Appendix at 4.

law, "a contract executed by a minor is not void, but it is voidable by the minor."

*PAK Foods Houston, LLC v. Garcia*, 433 S.W.3d 171, 176 (Tex. App.-Houston [14th

Dist.] 2014). In Texas the age of majority is eighteen. Tex. Civ. Prac. & Rem. Code

§ 129.001. "It is well settled that a minor's contracts are voidable at the minor's

instance, and they may be either disaffirmed by the minor or ratified after the minor

reaches majority." *PAK Foods*, 433 S.W. 3d at 176 (quoting *Dairyland County Mutual

Insurance Co. v. Roman*, 498 S.W.2d 154, 158 (Tex. 1973)). "However, once a minor

turns eighteen, [his] repudiation of a contract executed when [he] was a minor is only

valid if conveyed to the contracting party within a reasonable time after [his]

eighteenth birthday." *Webster v. Guillermo Perales*, No. 3:07-CV-00919-M, 2008 WL

282305, at *4 (N.D. Tex. Feb. 1, 2008) (Lynn, J.) (citing *Robinson v. Roquemore*, 2

S.W.2d 873, 874 (Tex. Civ. App.-Texarkana 1928)). "What constitutes a reasonable

time is a question of fact to be determined by the particular circumstances of the

case." *Id.* (citing *Roquemore*, 2 S.W.2d at 874).

Here, Norred signed the notice to employees when he was a minor. Norred

turned eighteen on July 9, 2018, and then repudiated the arbitration contract in his

response to Cotton Patch's motion, which was filed on June 28, 2019.[5] Given that

---

[5] Norred asserts that he repudiated the arbitration contract on April 26, 2019, when he filed his complaint in this suit. The complaint, however, does not mention any arbitration agreement, and the court concludes that Norred's act of filing a lawsuit, standing alone, was insufficient to repudiate the arbitration

(continued...)

almost a year passed between Norred's eighteenth birthday and his repudiation of the arbitration contract, the court concludes that Norred did not convey his repudiation to Cotton Patch within a reasonable time after his eighteenth birthday. See *Askey v. Williams*, 11 S.W. 1101, 1102 (Tex. 1889) (finding that a mortgagor's failure to disapprove the mortgage contract that he entered into as a minor until "about one year" after reaching the age of majority precluded him from avoiding the contract); cf. *Webster*, 2008 WL 282305, at *4 (finding that the plaintiff's repudiation occurred within "a reasonable period" where she repudiated her agreement less than six months after reaching the age of majority).

Fourth, the plaintiffs assert that the contracts between Cotton Patch and the plaintiffs are unconscionable because the notice to employees and the arbitration agreement contain contradictory terms, because the plaintiffs were not on notice of the terms of the arbitration agreement when they signed the notice to employees, and because the arbitration contract is one-sided. *See* Response at 22-23. Although the court notes that the notice to employees and arbitration agreement are not a model of contractual drafting, the court concludes that the terms set forth in the two documents are not so unclear and inconsistent as to render the arbitration contract

---

[5](...continued)
agreement. See *PAK Foods*, 433 S.W.3d at 177 (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 591 (Tex. 2008)) (finding that "the mere filing of suit may not necessarily disaffirm an arbitration agreement" because, for example, "[a] party may file suit but later determine arbitration is appropriate").

unconscionable.  Furthermore, even if the plaintiffs did not see the arbitration agreement prior to signing the notice to employees, the notice to employees contains numerous references to the arbitration agreement, which the court concludes were sufficient to put the plaintiffs on notice of the terms of the arbitration agreement.

In summary, the court concludes that the arbitration contracts between Cotton Patch and the plaintiffs are both valid and enforceable.

### 2. *Scope of the Arbitration Contract*

The court next considers whether the plaintiffs' FLSA claim falls within the scope of the arbitration contract.  It does.

The notice to employees states, in pertinent part: "I agree to use binding arbitration . . . for any claims . . . includ[ing] any concerning wages."  Reply Appendix at 5.  The arbitration agreement further states that the agreement "cover[s] all claims that [Cotton Patch] or [c]laimant may have which arise from: Any injury suffered by [c]laimant while in the Course and Scope of [c]laimant's employment with [Cotton Patch], . . . and any . . . claim of whatever kind and character."  Reply Appendix at 9. The plaintiffs' FLSA claim arises from the defendant's alleged failure to adequately compensate the plaintiffs.  The claim is thus one "concerning wages," and the court therefore concludes that the claim falls within the scope of the arbitration contract, even under the more restrictive language of the notice to employees.

3. *Legal Constraints*

The parties do not raise any legal constraints external to the arbitration contract, nor is the court aware of any. Therefore, the court need not address whether any constraints foreclose arbitration of this dispute.

III. <u>CONCLUSION</u>

In light of the foregoing, the defendant's motion to compel arbitration and stay proceedings in this case pending arbitration is **GRANTED**. The FAA directs federal district courts to stay proceedings pending arbitration. *See* 9 U.S.C. § 3. Accordingly, the parties shall proceed to arbitration for resolution of their dispute, and this action is **STAYED**, pending the outcome of the arbitration proceeding.[6]

**SO ORDERED**.

October 22, 2019.

*A. Joe Fish*

**A. JOE FISH**
**Senior United States District Judge**

---

[6] The court declines to consider the defendant's request that the court find that the plaintiffs have waived their right to arbitrate their claims as a class or collective action. *See* Motion at 12. The agreements between the parties state that "[a]ny question as to the arbitrability of any particular claim shall be arbitrated pursuant to the procedures set forth in this [a]greement." Reply Appendix at 9. Accordingly, the court concludes that the question of whether the plaintiffs may proceed on their claims collectively is a question to be resolved through arbitration.